477 S.E.2d 707

**ORANGEBURG COUNTY DEMOCRATIC PARTY a/k/a the Orangeburg County Committee of the Democratic Party of South Carolina, Respondent,**

v.

**SOUTH CAROLINA STATE ELECTION COMMISSION, Appellant.**

No. 24509.

Supreme Court of South Carolina.

Heard Sept. 19, 1996.

Decided Oct. 28, 1996.

N. Heyward Clarkson, III, of Clarkson, Fortson & Walsh, of Greenville; Attorney General Charles Molony Condon, Deputy Attorney General Treva Ashworth, and Senior Assistant Attorney General Charles H. Richardson, Columbia, for Appellant.

C. Bradley Hutto, of Williams & Williams, Orangeburg, for Respondent.

TOAL, Acting Chief Justice:

In this case, the circuit court ruled that a statute allowing the State Election Commission to collect from the Orangeburg County Democratic Party filing fees for unopposed primary

candidates effected an unconstitutional taking of the property of the local Democratic party. Because we find the Orangeburg County Democratic Party lacks any property rights in the filing fees of the unopposed candidates, we reverse.

## FACTUAL/PROCEDURAL BACKGROUND

The facts of this case are not in dispute. From June 1, 1994 through June 15, 1994, the Orangeburg County Democratic Party ("Party") collected filing fees of $7,496 from seventeen candidates in the Democratic primaries. Party did not submit to the State Election Commission the filing fees paid by those of the seventeen candidates who were unopposed in the primaries. S.C.Code Ann. § 7–13–40 (Supp.1995) requires political parties to submit to the State Election Commission filing fees for opposed and unopposed primary candidates.

Party brought this action to challenge the constitutionality of section 7–13–40, contending the statute effected a taking of Party's property without just compensation. The circuit court found the statute unconstitutional as applied to fees paid by unopposed primary candidates. State Election Commission now appeals.

## LAW/ANALYSIS

■ State Election Commission argues it has a right to the filing fees for unopposed primary candidates. We agree.

Section 7–13–40 provides in relevant part: "The filing fees for all candidates filing to run in all primaries, except municipal primaries, must be transmitted by the respective political parties to the State Election Commission...." This language requires the filing fees for unopposed primary candidates, as well as those for opposed candidates, to be transmitted to the State Election Commission. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995), makes this clear. In that case, we cited the 1994 amendment to section 7–13–40, which created the current version of the statute, and noted, "Clearly, the amendment ... requires filing fees for all candidates regardless of whether his or her name appears on the ballot." *Id.* at 436 n. 1, 454 S.E.2d at 892 n. 1. Accordingly, the only way Party now has any right to the filing fees for

candidates who are unopposed in the primaries is if section 7–13–40 effects an unconstitutional taking of Party property.

In determining whether section 7–13–40 effects an unconstitutional taking when it requires a political party to submit to the State Election Commission filing fees for candidates who are unopposed in the party primaries, one must first ascertain whether political parties possess any property rights in the filing fees of unopposed candidates. Party asserts that *Drummond v. Townes*, 169 S.C. 396, 169 S.E. 81 (1933), controls this question. The State Election Commission, however, argues *Drummond* implicitly has been overruled by subsequent legislation creating an entirely new statutory scheme for the administration of elections.

*Drummond,* a 1933 case, concerned a dispute between certain Democratic candidates for public office and the Greenville County Democratic party. After the candidates paid filing fees for the offices for which they intended to run, the Greenville County Democratic Party used some of the funds collected to contribute money to the national Democratic Party. The candidates whose filing fees were used for this purpose sued, seeking an injunction to prevent the monies from being paid to the national party. They argued that the funds were trust funds and could be spent by the local party only for campaign purposes in Greenville County. *Id.* at 398, 169 S.E. at 82.

The Supreme Court disagreed. Specifically, it found that even if the funds were considered trust funds, the candidates were not the beneficiaries of the trust. The Court said:

> They paid their money *under the rule of the Democratic party,* for the privilege of becoming candidates for office in the primary election of that party.... [T]hey elected to be candidates in the Democratic primary, and *the party required them to pay,* as a condition of their entry, the several sums fixed. When they did this, the money became the property of the party to be expended by its executive committee for party purposes, *including the expenses of conducting the primary election,* and, we venture to assert, for any purposes which furthered and advanced the legitimate aims and objects of the Democratic Party.

*Id.* at 398–99, 169 S.E. at 82 (emphasis added). In other words, the Court plainly considered political parties to have property rights in the filing fees paid by candidates in the party primaries. Equally important, however, each party financed and conducted its own primary and set its own filing fees when *Drummond* was decided. The State of South Carolina did not bear the burden of financing and conducting primaries for the political parties.

In our view, the circumstances surrounding modern political primaries are entirely different from those existing when *Drummond* was decided. Therefore, *Drummond* does not control the resolution of the present dispute. First, political parties in South Carolina no longer bear the burden of conducting and financing their own primaries. Section 7–13–40 provides in relevant part:

> In the event that a party nominates candidates by party primary, a party primary must be held by the party and *conducted by the State Election Commission* and the respective county election commissions.... The filing fees for all candidates filing to run in all primaries, except municipal primaries, must be transmitted by the respective political parties to the State Election Commission and placed by the executive director of the commission in a special account designated for use in conducting the primaries and must be used for that purpose. *The filing fee for each office is one percent of the total salary for the term of that office or one hundred dollars, whichever amount is greater.*

(emphasis added). In other words, State Election Commission conducts the primaries and the General Assembly sets the filing fees for candidates. The political parties do not set any specific fee so that candidates may have the privilege of running as a candidate of a particular political party; pursuant to state statute, filing fees are to be used to finance primaries.

Thus, the rationale underlying *Drummond* no longer applies. If the political parties no longer finance and conduct their own primaries, and, in fact, no longer even set filing fees, the purpose of the filing fee should be limited to that designated by the General Assembly. Prior statutory schemes or other arrangements for running party primaries created a party's property interest in candidates' filing fees; because

the statutory scheme has been altered to relieve the political parties of the responsibility of conducting primaries, the property interest in filing fees no longer exists.

 Party argues that its property interest exists by virtue of its continued responsibility for certain functions related to running the primaries. We do not think that the duties the parties must perform are dispositive of the question whether the parties have a property interest in unopposed candidates' filing fees. Granted, the political parties must advertise offices and provide places and times for candidates to file; the parties certainly bear some expenses, however minimal, in the performance of these duties. Importantly, however, the parties bear these expenses both for opposed and unopposed candidates, yet Party does not argue it deserves part of the filing fee for the opposed candidates. Rather, Party acknowledges the interest of the State Election Commission in the filing fees for candidates who are opposed in party primaries. Moreover, the State (and, by extension, the State Election Commission) may require political parties to perform certain functions relating to the nomination of party candidates, and, in so doing, the State need not fund every such mandate. *See, e.g., American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding constitutionality of statute precluding any payment of state funds to minor political parties to reimburse them for the costs incurred in conducting their nominating and ballot qualification processes, notwithstanding fact such processes were required by law as a precondition for party's candidates appearing on the ballot in the general election). Therefore, the requirement that parties certify unopposed candidates and perform other minor functions relating to party primaries does not give rise to any property interest in filing fees.

## Conclusion

Because Party lacks any property interest in the filing fees at issue, the judgment of the circuit court is **REVERSED.**

MOORE, WALLER and BURNETT, JJ., and H. SAMUEL STILWELL, Acting Associate Justice, concur.